Argued July 1, reversed September 20, motion to correct mandate allowed November 22, 1927.

## FRANK C. BRAMWELL, AS SUPERINTENDENT OF BANKS, *v.* JONAH SPARKS ET UX.

### (259 Pac. 295.)

**Alteration of Instruments—Statute Providing That Party Producing as Genuine a Writing Appearing to Have Been Altered shall Account for Appearance Held Inapplicable to Mortgage on Printed Form With Typewritten Slip Attached Describing Part of Mortgaged Land (Or. L., § 811).**

1. Section 811, Or. L., providing that the party producing a writing which appears to have been altered after its execution shall account for the appearance or alteration, *held* inapplicable, where printed form of mortgage was used, on which there was not sufficient space to describe property, and a typewritten slip was attached as a rider describing a part of the land mortgaged.

**Alteration of Instruments—Unauthorized Addition of 163.2 Acres to Description of Mortgaged Property Would be Material Alteration.**

2. Unauthorized alteration of mortgage by adding to description of property subject thereto an additional 163.2 acres would be material and render mortgage void.

**Alteration of Instruments—Mortgagors had Burden of Showing Alleged Alteration of Mortgage.**

3. Burden was on mortgagors to show truth of their allegation that typewritten slip attached to mortgage describing additional land as subject thereto was an alteration made by plaintiff.

**Alteration of Instruments—Evidence Held not to Show That Typewritten Slip Attached to Mortgage and Describing Additional Land was Alteration.**

4. In suit to foreclose mortgage having attached to it a typewritten slip describing additional land as subject thereto, evidence *held* not to show that the typewritten slip was an alteration.

---

1. Burden of explaining apparent alteration of instrument, see note in 37 Am. Rep. 260. See, also, 1 R. C. L. 1041 et seq.

2. See 1 R. C. L. 967.

Alteration of Instruments—Mortgage Transaction is Presumed Fair and Honest Where Alteration is Claimed.

5. Court will presume that transaction between parties to mortgage was fair and honest, where mortgagors claim that typewritten slip attached to mortgage and describing additional land as subject thereto was alteration.

Mortgages—In Mortgage Foreclosure Suit by State Officer Liquidating Bank, Bank's Failure to Record Deed Promptly Held no Proper Basis for Counterclaim.

6. In suit to foreclose mortgage brought by superintendent of state banks in charge of liquidation of closed bank, fact that bank had agreed to record a deed for the mortgagors and had failed to do so, whereby mortgagors lost right to redeem land from attachment, *held* no proper basis for a counterclaim.

---

Alteration of Instruments, 2 **C. J.**, p. 1267, n. 82, p. 1272, n. 13, p. 1287, n. 3, 5, p. 1291, n. 41.

From Klamath: A. L. LEAVITT, Judge.

Department 2.

This is a suit by the superintendent of state banks for the State of Oregon to foreclose a mortgage on real and personal property given to secure the payment of a note executed by defendants Jonas Sparks and Lulu Sparks, his wife, in favor of the First State and Savings Bank of Klamath Falls, for $4,128, dated May 20, 1921, and due November 1, 1921. There are three parcels of land described in the mortgage, namely, (1) The NE.¼ of section 6, Twp. 40 S., R. 13 E., W. M.; (2) The SE. ¼ of the SE. ¼ of section 31, Twp. 39 S., R. 12 E., W. M.; (3) Lots 1 and 2 NE. ¼ of SW. ¼, SE. ¼ of NW. ¼ of section 6, Twp. 40 S., R. 13 E., W. M. The mortgage also included certain livestock. It is alleged that no part of the principal and interest of the note and mortgage has been paid except the sum of $40.37. Defendant F. M. Miller was originally a party to this suit, but, on motion of the plaintiff, it was dismissed as to him

and he is, therefore, not concerned in this appeal. Defendant Sparks and his wife admit the execution of the note and mortgage, but allege that the latter instrument was materially altered by plaintiff since its execution in that, without their knowledge and consent, a typewritten slip of paper was pasted on the mortgage describing lots 1 and 2 in section 6, containing 163.2 acres not intended to be included therein. The trial court found in accordance with the contention of defendants and dismissed the suit. Plaintiff appeals.                    REVERSED.

For appellant there was a brief and oral argument by *Mr. A. W. Schaupp.*

For respondents there was a brief over the name of *Messrs. Oneill & Irwin.*

BELT, J.—1. Plaintiff offered the note and mortgage in evidence but objection was made thereto, and sustained by the court, for the reason that it appeared from an inspection of the mortgage that there had been an alteration and that, under the provisions of Section 811, Or. L., it was incumbent upon plaintiff to explain such alteration, and that the explanation given was not satisfactory. The section of the statute last cited provides as follows:

"The party producing a writing as genuine which has been altered, or appears to have been altered, after its execution or making, in a part material to the question in dispute, shall account for the appearance or alteration. He may show that the alteration was made by another without his concurrence, or was made with the consent of the parties affected by it, or otherwise properly or innocently made, or that the

alteration did not change the meaning or language of the instrument. If he do that, he may give the writing in evidence, but not otherwise."

Does this mortgage by reason of the typewritten slip pasted thereon have the appearance of being altered since its execution? We are unable to concur with the ruling of the Circuit Court in this respect. We see nothing suspicious about the document. A printed form was used on which there was not sufficient space to describe the property to be included in the mortgage. It was evidently necessary to attach the typewritten slip, in the form of a rider, describing the parcel of land in controversy. As stated in 2 C. J. 1291:

"If the apparent change indicates that its purpose was to accommodate a printed form to the wants of a particular occasion it will not be sufficient to engender that suspicion which requires a preliminary explanation."

While this practice is not free from criticism it is doubtless a common one. The rider was as much a part of the instrument as any other part. Thousands of insurance policies have riders attached and it would hardly be contended that from an inspection of the same a reasonable inference could be drawn of an alteration since issuance. The statute has no application. The mortgage should have been received in evidence without demanding that plaintiff explain or account for its alleged appearance of alteration. Even conceding there was appearance of alteration, the explanation given was, in our opinion, sufficient to admit it in evidence.

2, 3. Whether this mortgage was materially altered since its execution, without the knowledge and consent of defendants, is the vital question. If there

was an alteration it was a material one and would nullify the mortgage. It was incumbent upon defendants to establish by the greater weight of evidence that plaintiff made the alteration as alleged and if they failed to do so plaintiff was entitled to a decree of foreclosure: *Galloway* v. *Bartholomew,* 44 Or. 75 (74 Pac. 467); 1 R. C. L. 1041.

4, 5. Turning to the evidence it appears that the defendants for many years had been customers of the First State and Savings Bank and had obtained numerous loans. In 1919 defendants borrowed from the bank $3,600 with which to purchase the NE. ¼ of section 6, more particularly above described, from W. T. Garrett, and to secure payment of the loan, executed a mortgage on the property purchased. This note was due May 21, 1921. Defendants were also indebted to the bank for other small loans for which various kinds of security had been given. Hence, on May 20, 1921, the renewal mortgage sought to be foreclosed in this suit was executed. Defendants concede that at such time the second parcel of land, or the SE. ¼ of the SE. ¼ of section 31, was given as additional security, but deny that the third parcel, or lots 1 and 2 of section 6, was intended to be included in the renewal mortgage. The mortgage was recorded on June 23, 1921, and included the land described in the rider. It therefore follows that any alteration must have been made between the date of its execution, namely, May 20, 1921, and the date that it was recorded. The bank at this time was in charge of its officers and did not come under the control of the state bank examiner until January 28, 1922. It is not reasonable, therefore, to charge that the plaintiff, as bank examiner, made this alteration, since he had no opportunity to do so. It may be that

defendants intended to refer to the action of the plaintiff as the act of the bank. While appellant's contention may be correct as to a variance between the pleadings and the proof, we are inclined to pass on to the merits. Was there an alteration?

After the execution of the renewal mortgage it was sent by the bank through the mail to the defendants at Bonanza, to correct an error made by the notary public in taking their acknowledgment. If an alteration appeared at this time defendants would have had an opportunity to observe the same. Mrs. Sparks testified that she read the mortgage before signing it and that it did not include lots 1 and 2 nor any personal property. The personal property was not included on the typewritten slip but was described in the mortgage proper. There is not much controversy about the personal property and her contention in that respect tends to destroy the weight of her testimony relative to the alleged alteration. Indeed, it is alleged in defendants' answer that the "personal property described in said mortgage was discharged and satisfied by the bank on September 13, 1921." The witnesses to the execution of the mortgage did not testify. The transaction is presumed to be fair and honest: 1 R. C. L. 1042. This presumption is not overcome by the evidence. We find there was no alteration.

6. Defendants assert that when they purchased the NE. ¼ of section 6 from Garrett in November, 1919, the deed was left with the First State and Savings Bank with the agreement that the bank would have it recorded, but that it carelessly and negligently failed to do so until July 16, 1921. On July 6, 1921, the Bank of Lakeview commenced an action against W. T. Garrett and his wife attached this land as the property

of the defendants therein in whose name the record title appeared. The property was sold upon execution to the judgment creditor and the sale was confirmed on January 20, 1922. The bank then conveyed the property to the defendant F. M. Miller. Defendants claim that, by reason of the bank's failure to record the deed, they have been denied the right of redemption and have sustained damages in the sum of $9,000. This is not a proper counterclaim to the instant suit nor is it pleaded as such. It might be the basis of an independent action, but has no relevancy here.

In the trial below counsel for plaintiff expressly waived the right of foreclosure upon the NE. $\frac{1}{4}$ of section 6, or the land purchased by Miller, and also stipulated that the personal property described in the mortgage should not be included in the decree of foreclosure.

It follows that the decree of the Circuit Court is reversed and it is hereby decreed that the mortgage, in so far as it pertains to the two other parcels of land therein particularly described, be foreclosed in the manner provided by law, to pay the amount due on the note as alleged in the complaint, and that the plaintiff be awarded the sum of $500 as attorneys' fees for the prosecution of this suit. It is further decreed that plaintiff be allowed costs and disbursements.

REVERSED AND DECREE ENTERED. MOTION TO CORRECT MANDATE ALLOWED.

RAND, C. J., and MCBRIDE and BROWN, JJ., concur.